UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROUND TABLE FINANCIAL, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**ROYAL BANK OF SCOTLAND GROUP, PLC; RBS WORLDPAY, INC. FKA RBS LYNK INCORPORATED; RBS CITIZENS, NATIONAL ASSOCIATION AKA RBS CITIZENS, N.A.; and DOES 1 through 10, inclusive,**<br><br>Defendants.<br>_____ | CASE NO. SACV 09-0020 AG (MLGx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

The Third Amended Complaint (the "TAC") filed by plaintiff Round Table Financial, Inc. ("Plaintiff") fails to allege adequately that Plaintiff is a third-party beneficiary to either the Payment Services Distribution Agreement (the "Distribution Agreement") or the Customer Processing Agreement. The Court GRANTS the motion to dismiss (the "Motion") filed by defendants RBS Worldpay and RBS Citizens ("Defendants").

Dismissal without leave to amend is appropriate when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In this case, Plaintiff has had four chances to file a complaint that

adequately alleges Plaintiff's claims: the Complaint and the Amended Complaint in state court, and the Second Amended Complaint and the TAC in this Court. At this point, the Court is convinced that the complaint could not possibly be cured by amendment. The Court grants the Motion without leave to amend.

**BACKGROUND**

The following facts are taken from the TAC, and for the purposes of this Motion, the Court assumes them to be true. Plaintiff matches credit card processing companies with merchants who need credit card processing services. (TAC ¶ 1.) Defendant RBS Worldpay ("Worldpay") is a credit card processing company. (*Id.* ¶ 2.) Defendant RBS Citizens is Worldpay's parent company. (*Id.*)

Card Processing Consultants, Inc. ("CPC") is a third party that provides credit card equipment and related goods and services. (TAC ¶ 6.) Plaintiff signed an "Independent Contractor Agent Reseller Agreement" ("ICARA") with CPC. (*Id.*) Under the ICARA, Plaintiff agreed to help CPC market its products and grow its market share. (*Id.*) The ICARA said, "The relationship of CPC and [Plaintiff] is that of Independent contractors. Neither [Plaintiff] nor [Plaintiff's] employees, consultants, contractors or agents are agents, employees, partners or joint ventures of CPC, nor do they have any authority to bind CPC by contract or otherwise to any obligation." (Mot. Ex. 1 § 1.05.)

Plaintiff and CPC's efforts resulted in CPC signing a Payment Services Distribution Agreement (the "Distribution Agreement") with Worldpay. (TAC ¶ 8.) Plaintiff did not sign the Distribution Agreement and is not mentioned in the Distribution Agreement. The Distribution Agreement states, "Except as expressly provided herein, nothing in this Agreement shall confer any rights upon any person or entity not a signatory to this Agreement." (Memorandum of Points and Authorities in Support of Motion of Defendants to Dismiss Plaintiff's Third Amended Complaint ("Mot.") Ex. 2 p. 10.) Defendants knew that CPC and Plaintiff were working together under the ICARA to bring merchants to Worldpay for card processing services

and that CPC intended for Plaintiff to benefit from the Distribution Agreement. (SAC ¶ 9.)

Plaintiff and CPC introduced Defendants to Monavie, Inc. ("Monavie"), a merchant looking for credit card processing services. (TAC ¶ 15.) Defendants and Monavie entered into a Customer Processing Agreement. (*Id.*) Plaintiff did not sign and is not mentioned in the Customer Processing Agreement. Defendants knew Plaintiff brought Monavie to the transaction and knew that CPC intended for Plaintiff to benefit from the Customer Processing Agreement. (*Id.* ¶ 16.) One of the parties cancelled the Customer Processing Agreement, and Monavie paid Defendants a cancellation fee. (*Id.* ¶ 18.)

Plaintiff sued Defendants for breach of the Customer Processing Agreement among Defendants and Monavie, and for breach of the Distribution Agreement among Defendants and CPC. Plaintiff alleges it is an intended third-party beneficiary of both agreements. (SAC ¶¶ 22, 25.) Plaintiff seeks a total of $60 million in damages. (*Id.* ¶¶ 24, 27.)

## ANALYSIS

### 1. REFERENCE TO DOCUMENTS BEYOND THE PLEADINGS

Defendants argue that the TAC incorporates the ICARA, the Distribution Agreement, and the Customer Processing Agreement by reference, and that the Court may consider these documents in ruling on Defendants' 12(b)(6) motion even those they are not attached to the TAC. The Court agrees. "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). But "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in a ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

The TAC refers to the ICARA, the Distribution Agreement, and the Customer Protection

Agreement. The TAC alleges that Plaintiff and CPC entered into the ICARA. (TAC ¶ 6.) The TAC also alleges that Defendants "breached the Consumer Processing Agreement among Defendants and Monavie, as to which Plaintiff is an intended third-party beneficiary." (*Id.* ¶ 23.) Further, the TAC alleges that Defendants "breached the Payment Services Distribution Agreement with CPC, as to which Plaintiff is an express, intended third-party beneficiary." (*Id.* ¶ 26.) The TAC alleges the contents of the ICARA, the Distribution Agreement, and the Consumer Processing Agreement. Thus, the TAC incorporates these documents by reference, and the Court may consider them when ruling on Defendants' 12(b)(6) motion.

### 2. DEFENDANTS' 12(b)(6) MOTION TO DISMISS

Defendants argue that the TAC fails to state a claim. The Court agrees.

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. FED R. CIV. P. 12(b)(6). But "[o]rdinary pleading rules are not meant to impose a great burden upon a plaintiff," *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), and a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007)). Conversely, a complaint should be dismissed for failure to state a claim where the factual allegations do not raise the "right of relief above the speculative level." *Id*.

The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). But courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is appropriate when the

4

Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

### 2.1 Governing law

A clause in the Distribution Agreement says "[t]his Agreement shall be governed by, interpreted and construed in all respects in accordance with and under the laws of the State of Georgia." (Mot. Ex. 2 p. 11.) A clause in the Customer Processing Agreement says "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Georgia." (Mot. Ex. 3 p. 4.) Thus, both agreements are governed by the law of Georgia, although the result likely would be the same under California law.

Georgia law states that "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." Official Code of Georgia ("OCGA") § 9-2-20(b). Georgia courts have interpreted this section as saying:

> In order for a party to have standing to enforce a contract under [OCGA Section 9-2-20(b)] it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. . . . There must be a promise by the promisor to the promisee to render some performance to a third person and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary.

*Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 392 (Ga. Ct. App. 1988). While "the third-party beneficiary need not be specifically named in a contract[,] the dispositive issue is whether the parties' intention to benefit the third party is shown on the face of the contract." *Northen v. Tobin*, 262 Ga. App. 339, 344 (Ga. Ct. App. 2003).

In its "Opposition to Motion to Dismiss" (the "Opposition"), Plaintiff argues that "[u]nder Georgia law, in addition to all of the 'California law' ways a person may be a third-party beneficiary to a contract, third-party beneficiary status arises when the claimant is a party to the consideration of the underlying contract, and/or has a legal or equitable interest therein, regardless of the intent of the contracting parties, at any time." (Opp'n 1:19-25.) Thus,

according to Plaintiff, Plaintiff is a third-party beneficiary "regardless of the intent of the contracting parties" because "intent is moot." (Opp'n 1:24, 5:4.) Plaintiff bases this sweeping statement on *Stevenson*, a Georgia Court of Appeals case from more than 60 years ago.

*Stevenson* does not represent the radical departure that Plaintiff claims. *Stevenson* says, "The rule which obtains most generally in America is that a person not a party to the contract may maintain an action on it if he is a party to the consideration or the contract was entered into for his benefit; and, if a person for whose benefit a contract is made had either a legal or equitable interest in the performance of the contract, he need not necessarily be privy to the consideration." S*tevenson v. Atlanta Mission Holding Corp.*, 72 Ga. App. 258, 261 (Ga. Ct. App. 1945).) *Stevenson* cites *People's Bank*, which illuminates *Stevenson*. *People's Bank* says:

> [T]he great weight of authority is to the effect that if the promise is made for the purpose of conferring a benefit on a person, though he be not a party to the contract, or furnish the consideration for the promise, he can bring suit upon it. The benefit which is referred to as giving a right of action by a beneficiary, under the American rule, must not be an indirect or incidental one; but *the contract, properly construed, must exhibit an intent to confer a benefit on the third party*.

*People's Bank of Calhoun*, et al. *v. Harry L. Winter, Inc.*, 132 S.E. 422, 426 (Ga. 1926) (emphasis added) (internal quotation omitted). Thus, *Stevenson* does not expand the scope of third-party beneficiary status. It does not create third-party beneficiaries "regardless of the intent of the contracting parties." To the contrary, the contract "must exhibit an intent to confer a benefit on the third party."

At oral argument, Plaintiff cited two additional cases to support his argument, *Carruth v. Aetna Life Ins. Co.*, *et al.*, 157 Ga. 615, 616 (Ga. 1924), and *Sims' Crane Service, Inc. v. Reliance Ins. Co.*, 514 F. Supp. 1033, 1036 (S.D. Ga. 1981). In *Carruth*, the Georgia Supreme Court found that certificate holders were third-party beneficiaries of an insurance policy even though they were not named on the face of the policy. *Carruth*, 157 Ga. at 616. But because

*Carruth* involved instruments more closely tied together than any here, it is unpersuasive.

Likewise, *Sims* also is unpersuasive. In *Sims*, the Southern District of Georgia found that the language of the contract provided for third-party beneficiaries like Sims. The issue in *Sims* was "whether [Sims], as a materialman in the status of lessor of machinery to a subcontractor of the prime, is, as a matter of law, an intended beneficiary under the general contractor's surety bond entitled to recovery on the bond for the default of the subcontractor." *Sims*, 514 F. Supp. at 1036. The relevant language of the contract said that "the Principal . . . shall promptly make payments to all persons, firms, subcontractors, and corporations furnishing materials for or performing labor in the prosecution of the work provided for in (the general) contract . . . ." *Id.* The Southern District of Georgia found that this language "clearly denotes an intent by the parties to endow materialmen [like Plaintiff] . . . with a beneficial interest in the bond." *Id.* at 1036-37. In contrast to *Sims*, here the language of the Distribution Agreement or the Customer Processing Agreement does not "clearly denote[ ] an intent by the parties" to benefit Plaintiff. Neither *Sims* nor *Carruth* alters the Court's conclusion that under Georgia law, for Plaintiff to be a third-party beneficiary, either the Distribution Agreement or the Customer Processing Agreement "must exhibit an intent to confer a benefit on the third party." *Calhoun*, 132 S.E. at 426.

With this in mind, in Sections 2.2 and 2.3 the Court analyzes the language of the Distribution Agreement and the Customer Processing Agreement to determine if Plaintiff is a third-party beneficiary under those contracts.

### 2.2 The Distribution Agreement

Plaintiff has not sufficiently pled that it is an intended third-party beneficiary to the Distribution Agreement. The Distribution Agreement says that "[e]xcept as expressly provided herein, nothing in this Agreement shall confer any rights upon any person or entity not a signatory to this Agreement." (Mot. Ex. 2 p. 10.) Plaintiff asserts that Defendants knew CPC

and Plaintiff were working together under the ICARA and knew CPC intended for Plaintiff to benefit from the Distribution Agreement. Plaintiff also asserts that Defendants intended the contracts they signed with third parties to benefit brokers like Plaintiff. (TAC ¶ 8.)

But the Distribution Agreement does not mention Plaintiff. In fact, the Distribution Agreement says that it does not confer rights on entities except as expressly provided. Plaintiff cannot manufacture intent simply by alleging that intent existed, when this allegation directly contradicts the language of the Distribution Agreement. When ruling on a motion to dismiss, this Court will not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988.

Plaintiff also argues that Plaintiff is a third-party beneficiary under the Distribution Agreement because Plaintiff is a "Sales Agent" as defined by the Distribution Agreement, and Sales Agents are third party beneficiaries to the Distribution Agreement. This argument is not persuasive.

In its order granting Defendants' previous motion to dismiss, the Court explained that "Plaintiff has not sufficiently alleged facts which show it is a Sales Agent under the language of the Distribution Agreement" because "Plaintiff has not alleged that it is an employee of CPC." (March 30, 2009 Order.) In the TAC, Plaintiff still does not allege that it was an employee of CPC. Plaintiff does allege that "[u]nder Section 1.0 of the Payment Services Distribution Agreement, Plaintiff was, at all material times, a Sales Agent of CPC, as that term is defined therein." (TAC ¶ 12.)

But Plaintiff runs up against the same problems that Plaintiff encountered last time. The Distribution Agreement defines "Sales Agents" as "contracted employees" of CPC. (Mot. Ex. 2 p. 1.) Plaintiff has not alleged that it is an employee of CPC. Further, Plaintiff's own allegations point to Plaintiff being an independent contractor or a consultant. For example, in the TAC Plaintiff notes that the contract between Plaintiff and CPC is called the "Independent Contractor Agent Reseller Agreement." Finally, the language of the ICARA is unambiguous. The ICARA says, "The relationship of CPC and [Plaintiff] is that of Independent contractors. Neither [Plaintiff] nor [Plaintiff's] employees, consultants, contractors or agents are agents, employees,

partners or joint ventures of CPC, nor do they have any authority to bind CPC by contract or otherwise to any obligation." (Mot. Ex. 1 ¶ 1.05.)

Allegations that are unreasonable inferences or unwarranted deductions of fact are not proper. *Sprewell*, 266 F.3d at 988. In the TAC, Plaintiff asserts that it was a Sales Agent under the Distribution Agreement. But the documents that Plaintiff incorporates via the TAC show that Plaintiff was not a Sales Agent.

Finally, Plaintiff argues that the "provisions [of the Distribution Agreement] manifest a general intent on the part of the parties to the contract that persons who are responsible for the generation of revenue thereunder will be properly compensated." (Opp'n 4:21-23.) But the Distribution Agreement explicitly states that compensation will be paid to CPC. (Mot. Ex. 2 ¶ 5.1.) It does not say that compensation will be paid to anyone else.

Plaintiff has not sufficiently pled that it is a third-party beneficiary to the Distribution Agreement.

### 2.3 The Customer Processing Agreement

The Customer Processing Agreement does not mention Plaintiff or any other third party. Plaintiff argues that the TAC "establish[es] the knowledge and intent of the parties to the Customer Processing Agreement that Plaintiff benefit thereby." (Opp'n 5:14-16.) Thus, Plaintiff argues that "the only reasonable conclusion is that Plaintiff is a third-party beneficiary." (*Id.* 5:20-21.) Plaintiff argues that this conclusion "becomes more obvious in light of . . . Plaintiff's status as a third-party beneficiary" under the Distribution Agreement. (*Id.* 5:21-27.)

The Court disagrees. First, in Section 2.2 the Court concluded that Plaintiff is not a third-party beneficiary under the Distribution Agreement. Further, the Court finds these to be exactly the sort of conclusory allegations that *Sprewell* attacked. As stated in Section 2.1, a third party may enforce a contract only if it "clearly appear[s] from the contract that it was intended for his benefit." *Walls*, 186 Ga. App. at 392. Here, Plaintiff fails to specify any provision of the Customer Processing Agreement that confers on Plaintiff the status of third-party beneficiary.

Instead, Plaintiff merely notes that the Customer Processing Agreement does not contain an express disclaimer of third-party beneficiary rights. Although Plaintiff alleges that Defendants knew Plaintiff brought Monavie to the transaction and knew CPC intended for Plaintiff to benefit from the Customer Processing Agreement, these conclusory allegations are not enough to survive a motion to dismiss. *Sprewell*, 266 F.3d at 988.

### 3. CONCLUSION

Under Rule 12(b)(6), the TAC fails to state a claim as to Defendants' breach of the Distribution Agreement or Defendants' breach of the Consumer Processing Agreement.

## DISPOSITION

The Court GRANTS the Motion. Plaintiff has had four chances to file a complaint that adequately alleges Plaintiff's claims. Plaintiff has failed to do so. At this point, the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). The Court grants the Motion without leave to amend.

IT IS SO ORDERED.

DATED: June 23, 2009

_____
Andrew J. Guilford
United States District Judge